IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SIMON NICHOLAS RICHMOND, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 3:14-CV-0583-K |
| FOREVER GIFTS, INC. (TEXAS) | § | |
| d/b/a FACTORY DIRECT COST, and | § | |
| FOREVER GIFTS, INC. (CHINA) | § | |
| | § | |
| Defendants. | § | |

## *MARKMAN* MEMORANDUM OPINION AND ORDER

Before the Court are the parties' briefs on the issue of claim construction of the patent-in-suit, U.S. Patent Number 8,514,094 ("the '094 Patent"). The Court has reviewed the parties' briefs and all related filings and evidence, including the patent-in-suit, the specification, the patent prosecution history to the extent it was submitted by the parties, as well as the parties' proposed claim constructions. The Court hereby construes the disputed claims according to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 360 (1996).

I.    Background

A.    Procedural

Plaintiff, Simon Nicholas Richmond ("Richmond") initiated the current action by filing his *Complaint and Jury Demand*, in which it is alleged, that Defendants, Forever Gifts, Inc. (Texas) and Forever Gifts, Inc. (China) (collectively "Forever Gifts")

infringed upon a patent issued to Richmond. Since the parties dispute the meaning of the claim language of the patent in suit, it is necessary for the Court to construe the disputed claim terms of the patent.

### B.     The Patent in Suit: The '094 Patent

The '094 patent, entitled "Solar Gazing Globe" was issued by the USPTO on August 20, 2013. It was issued to Richmond, who is the inventor and the sole owner of the entire right, title, and interest in the '094 patent.

The patent discloses the invention of solar lighting device, in which a solar cell is used to charge the device's battery during the day and at night the battery is used to power a light of the device. According to the patent, the disclosed lighting device can be used for decorative purposes to illuminate areas at night and also can be used as a night time wind chime and wind detector because the at least part of the device is visible at night.

## II.     Applicable Law

### A.     Principles of Claim Construction

Claim construction is a matter of law. *See Markman*, 52 F.3d at 979. The Federal Circuit Court has held that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). The Supreme Court has stated that the claims are "of primary importance, in the effort to ascertain precisely what it is that is patented." *Phillips*, 415

F.3d at 1312. A court looks to three primary sources when determining the meaning of claims: (1) the claims, (2) the specification, and (3) the prosecution history. *Markman*, 52 F.3d at 979. The claims of the patent must be read in view of the specification of which they are a part.  *Id.* The specification consists of a written description of the invention which allows a person of ordinary skill in the art to make and use the invention. *Id.* This description may act as a dictionary explaining the invention and defining terms used in the claims. *Id.*  Although a court should generally give such terms their ordinary meaning, a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, so long as the special definition of the term is clearly stated in the patent specification or file history. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

The court starts with the claim itself, read in light of the specification. *See Vivid Technologies, Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999). While the claims themselves provide significant guidance as to the meaning of a claim term, the specification is generally dispositive as "it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1314-1315. In addition to the claim language and specification, the prosecution history is often helpful in understanding the intended meaning, as well as the scope of technical terms in the claims. *See Vivid*, 200 F.3d at 804. In particular, the prosecution history is relevant in determining whether the patentee intends the language of the patent to be understood in its

ordinary meaning. Using these tools, the court construes only the claims that are in controversy and only to the extent necessary to resolve the dispute. *Vivid*, 200 F.3d at 803.

The words of a claim are usually given their ordinary and customary meaning. *See Phillips*, 415 F.3d at 1312. Ordinary and customary meaning is the meaning the claim term would have to a person of ordinary skill in the art (e.g., field of the invention). *See Id.* at 1313; *Markman*, 52 F.3d at 979. A person of ordinary skill in the art would read the claim term in the context of the entire patent, including the specification, not just the particular claim where the term appears. *Phillips*, 415 F.3d at 1313. There are instances where the ordinary meaning of claim language, as a person of skill in the art would understand it, "may be readily apparent even to lay judges," thereby requiring "little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. In these situations, general purpose dictionaries are useful. *Id.*

But, in many cases, the court must determine the ordinary and customary meaning of the claim terms which have a certain meaning in a field of art. *Id.* The court can look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Id.* These sources can include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the

meaning of the technical terms, and the state of the art." *Id.*

Aside from the written description and the prosecution history, the claims themselves also offer assistance as to the meaning of certain claim terms. *Id.*

When the intrinsic evidence, that is the patent specification and prosecution history, unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, which is everything outside the specification and prosecution history, is improper. *See Vitronics*, 90 F.3d at 1583. While the Court may consult extrinsic evidence to educate itself about the invention and relevant technology, it may not rely upon extrinsic evidence to reach a claim construction that is clearly at odds with a construction mandated by the intrinsic evidence. *See Key Pharm. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

## III.   Information and Argument Not Relevant To Claim Construction

The Court initially notes that both parties, in their claim construction briefing, have provided to the Court information that is not relevant to the issue of claim construction. In his opening brief, Richmond provides the Court with an overview of the disclosed invention of the patent in suit, which includes a list of what Richmond claims are unique features and benefits of the invention. Forever Gifts responds that this information is not relevant to claim construction and would be improper to consider during claim construction. The Court is of the opinion that Forever Gifts is correct in its assertion. At times such information might be relevant to the meaning of

the claim language, but in this case none of the information provided by Richmond affects the meaning of the claim language.

Forever Gifts did not simply stop at its assertion. Instead Forever Gifts provided its own section of information not relevant to claim construction and not proper information or argument for the Court to consider in the claim construction process. Forever Gifts presented to the Court a section in its briefing that addressed the obviousness or lack of novelty of the claimed invention in which it alleged that the invention is nothing more than a combination of well known elements.

The Court is of the opinion that both the information provided by Richmond regarding the claimed benefits of the invention and the information provided by Forever Gifts regarding the obviousness or lack of novelty of the invention are not relevant to construction of the claims in dispute and the consideration of such information at the claim construction phase of this matter would be improper.

IV.   **Construction of the Patent Claims and Terms**

A.   **The Disputed Claim Phrases**

The parties dispute the meaning of certain phrases used in the claim language of the patent in suit. The parties disagree to as to the meaning of the following phrases:

- "an at least partially light-transmissive diffuser" and "diffuser," at least one of which occurs in Claims 1, 9, 12, and 15 of the '094 Patent.

- "axial conduit" which occurs in Claims 7, 8, 9, and 12 of the '094 Patent;

- "battery compartment" and "wherein said battery compartment is integrally formed with said neck portion," at least one of which occurs in Claims 1, 5, 9, 12, and 15 of the '094 Patent;

- "closure member," "lower aperture," at least one of which occurs in Claims 1, 10, and 12 of the '001 Patent and "a diffuser having a lower aperture," which occurs in Claim 9 of the '094 Patent.

The full language of all of the '094 Patent claims are in the record before the Court and the Court has fully reviewed all the claims of the patent, including those containing the disputed phrases. The Court finds no need to repeat the full language of those claims in this order.

 **B.**  **Construction of Disputed Claim Phrases**

 **1.**  **"an at least partially light-transmissive diffuser" and "diffuser"**

The parties dispute the meaning of the phrase "an at least partially light-transmissive diffuser" and of the term "diffuser," one of which occurs in of Claims 1, 9, 12, and 15 of the '094 Patent. Richmond asserts that this phrase and term should be given their plain and ordinary meanings and in the alternative they should be construed to mean "at least partly light-transmissive structure for spreading light such that objects, etc., on the opposite side are not clearly visible" and "light distribution device for spreading light such that persons, objects, etc., on the opposite side are not clearly visible," respectively. Forever Gifts asserts that the phrase and the term should

be construed to mean "a partially light-transmissive device that distributes or spreads light from a light source evenly" and "a device that distributes or spreads light from a light source evenly," respectively.

Based on the parties' proposed constructions, there is no dispute as to the meaning of "at least partially-transmissive" because both parties simply repeat this phrase in their proposed claim constructions; the issue in dispute between the parties is the meaning of "diffuser." Richmond proposes that a diffuser spreads light so that one cannot clearly see an object through the diffuser. Forever Gifts proposes that a diffuser must spread light evenly.

In support of his argument, that a diffuser spreads light so that one cannot clearly see an object through the diffuser, Richmond argues that the specification describes the diffuser of the invention in a manner that supports a construction that includes the idea that objects cannot be clearly seen through the diffuser; that statements in the specification describe the diffuser as simply being a structure that spreads light without any quantification of how evenly the light is spread; and that statements in the specification describe a translucent diffuser, which he argues equates to a diffuser where objects are not clearly visible through the diffuser.

In support of its argument that a diffuser must spread light evenly, Forever Gifts directs the Court's attention to statements in the summary and abstract of the patent that describe the general nature of the diffuser. It argues that this general discussion of

the diffuser supports a construction that requires the diffuser to spread light evenly and that, if the light was not spread evenly, the invention would not function as intended because this would create dark spots, shadows, and other anomalies that would detract from the appearance of the invention. Forever Gifts also cites various dictionary definitions of diffuser that include the idea that a diffuser must spread light evenly.

The Court agrees with both parties that a diffuser spreads light. The plain and ordinary meaning of a diffuser is a structure or device that spreads out or distributes something. In this case, the diffuser is intended to spread out light that comes from the light source inside the invention. But, the Court disagrees with the other portions of both parties' proposed constructions. Richmond's proposed construction adds a limitation that the diffuser must make it so one cannot clearly see through the diffuser. Forever Gifts' proposed construction adds the limitation that the light must be spread evenly. The Court finds no support for inclusion of either of these limitations in the construction of "diffuser" as it is used in the claims of the patent in suit.

The additional limitations provided by each parties' proposed constructions describe common uses for light diffusers. For example, one may use something like textured glass or a slotted structure as a light diffuser to prevent objects from being clearly seen through the diffuser. This would give the effect of not being able to clearly see what was on the other side of the diffuser, such as a light source. As another example, one might want to create an even glow that emanates from a light source,

which could be done with a diffuser that has an even coating over a piece of glass, like a the frosted glass of light bulb. But there is nothing in the '094 Patent that requires the diffusers of the claims to have these properties. If the inventor wanted the diffuser in the claims to be required to have these properties, the claims could have easily been written to include these properties into the diffuser limitation. Instead, the claims simply recite that a "diffuser" is a required limitation of the claimed invention. There is no further limitation on the way that the diffuser diffuses light and the specification of the patent does not support including any such limitation into the claim language.

The patent specification does not have any indication that a diffuser must spread light evenly or prevent a person from clearly seeing objects through the diffuser. Both parties cite the summary and abstract portions of the patent in support of their proposed constructions. But, these portions of the patent certainly do not require the diffuser to have either of these properties. The pertinent parts of the summary of the invention reads as follows:

> "A lighting device is described as having an at least partially light-transmissive diffuser having an aperture and generally enclosing a chamber. An at least one electrical light source is positioned to direct light through at least a portion of the at least partially light-transmissive diffuser via the chamber. ... A base portion attaches to a portion of the at least partially light-transmissve diffuser proximate the aperture. ... The aperture is generally circular in shape; wherein the at least partially light-transmissive diffuser is secured to the base portion via the aperture .... The solar cell is exposed to the chamber so that the solar cell receives ambient light through at least part of the at least partially light-transmissive diffuser to charge the at least one vertically-oriented

rechargeable battery." '094 Patent at 1:50-2:17.

Nothing in this language requires the diffuser to spread light evenly or to prevent objects from clearly being seen through the diffuser. The language simply refers to a diffuser which diffuses light coming from the light source inside the invention and sunlight that is used to charge the battery of the invention.

Nothing in the remainder of the specification supports inclusion of these limitations in the construction of diffuser. The word "diffuser" is only used in the summary of the invention, the abstract, and the claims, and in the discussion of Fig 21 of the patent. The specification discussion of Fig 21 indicates that the invention depicted in that figure has a diffuser that is a distinct component of the invention from the globe or lens that surrounds the light source. '094 Patent at 27:10-16. Forever Gifts argues that this distinction somehow supports its construction that requires the light to be spread evenly by the diffuser. But, it does not provide the Court with an explanation as to how this is so. Forever Gifts provides the Court with statements from the specification that describe the function of the globe or lens, not the diffuser. This does nothing to help define the "diffuser" of the claims of the patent.

The Court also notes that, from the briefing, it appears that there may be a dispute between the parties as to the difference between the lens or globe of the specification and the diffuser of the claims, if there is a difference. Fig. 21 makes a distinction between these two components, but other figures do not. Forever Gifts

asserts that they are distinct structures. Richmond does not address this. But, because the parties have not requested that the Court address this issue and the claims require a diffuser and do not require a lens or globe, the Court declines to further address this issue.

In regards to the dictionary definitions provided by Forever Gifts, the Court is not persuaded that these definitions should control the meaning of diffuser in the claim language. The definitions appear to be cherry picked definitions that require light to be spread evenly. Considering the other possible connotations of a diffuser, which do not require even distribution, and the lack of any supporting language in the specification the Court is of the opinion that it would not be correct to limit the diffuser to the properties presented by this extrinsic evidence.

Regarding, Richmond's argument that the specification supports a construction that requires a diffuser to prevent objects from being clearly seen because the specification discusses the use of a translucent material, the Court notes that the claim language already addresses this issue. A translucent material is by its nature one that allows some but not all light to travel through the material, i.e. a partially light-transmissive material. The claims already include the "partially light transmissive" limitation. To include this limitation in the construction of diffuser, would duplicate this limitation and would eliminate the distinction in the claims between a "diffuser" and "an at least partially light-transmissive diffuser." So, Richmond's proposed

construction is not supported because it is in conflict with the claim language.

In conclusion, because the claim language does not express any specific limitations on how the diffuser is to spread light and the specification does not provide any support for inclusion of the proposed limitations regarding how the light is diffused the Court adopts the portion of the parties' proposed constructions that require a diffuser to spread light but declines to adopt the portions of the parties' constructions that require the light to be spread evenly or for the diffuser to prevent a person from clearly seeing objects through the diffuser. So, the Court construes "diffuser" to mean "a structure for spreading light" and "an at least partially light-transmissive diffuser" to mean "an at least partially light-transmissive structure for spreading light."

## 2.    "axial conduit"

The parties dispute the meaning of the phrase "axial conduit," which occurs in Claims 7, 8, 9, and 12 of the '094 Patent. Richmond asserts that this phrase should be construed to mean "axial elongated pipe or tube." Richmond asserts that this proposed construction is consistent with the usage of the phrase in the patent claims and specification. Forever Gifts asserts that the phrase should be construed to mean "a tube or pipe situated along an axis." Forever Gifts asserts that it is not necessary to include "elongated" in the construction of this phrase because this adds ambiguity to the construction of the phrase.

The parties are in agreement that an axial conduit is a pipe or tube because both

proposed constructions state as much. The only substantial difference between the two proposed constructions is that Richmond requests that the construction specify that the tube or pipe is elongated and Forever Gifts asserts that this is not necessary and lends itself to creating ambiguity in the meaning of the phrase.

The Court agrees with the part of the parties' proposed constructions that define the axial conduit as a tube or pipe and with Forever Gifts that it is unnecessary and unhelpful to specify that the tube or pipe is elongated. A tube or pipe, by its very nature is an elongated structure. So, there is no need to further specify this in the construction of the phrase.

Regarding, Forever Gifts assertion that the tube or pipe is "situated along an axis," the Court is of the opinion that this also is unnecessary language in the construction of this phrase. The inclusion of this language in the construction of this phrase is unnecessary and it adds ambiguity to the meaning of the phrase. The proposed construction is unclear as to what exactly is situated along an axis. It could be that the axis referred to is the natural axis of rotation of tube or pipe, i.e an axis running the length of the tube or pipe and situated in the center of the tube or pipe. If this is the axis that Forever Gifts is referring to, then it is unnecessary to specify this in the construction of this phrase because, like "elongated," this is a feature of a tube or pipe already present under the normal meaning of tube or pipe. So, including this language would create ambiguity in the meaning of the phrase. Or, in referring to an axis, Forever

Gifts could be referring to an axis of the claimed invention itself in an attempt to define how the tube of pipe is located and oriented in the invention as a whole. If this is the case, then it is unnecessary language because the claims already provide a description of the orientation and placement of the axial conduit in the claimed invention. For example, Claim 7 states that the axial conduit runs "through said support member's center of rotational symmetry." '094 Patent at 29:10-12. The other claims have similar language. So, it is unnecessary and unhelpful to further specify the location and orientation of the axial conduit in the construction of the phrase.

In conclusion because the parties agree that an axial conduit is a tube or pipe; it is unnecessary and creates ambiguity to further define that a tube or pipe is elongated or has an axis; and it is unnecessary and creates ambiguity to describe the orientation and location of the axial conduit in the claimed invention the Court construes "axial conduit" to mean "a tube or pipe."

   3. "a battery compartment" and "wherein said battery compartment is integrally formed with said neck portion"

The parties dispute the meaning of the phrases "a battery compartment" and "wherein said battery compartment is integrally formed with said neck portion" at least one of which occur in Claims 1, 9, 12, and 15 of the '094 Patent.

   a. "battery compartment"

Richmond asserts that "battery compartment" should be given its plain and

ordinary meaning and in the alternative the phrase should be construed as "a part of enclosed space that holds a cell or cells that furnish electricity." Forever Gifts asserts that "battery compartment" should be construed as "structure that holds a cell or cells that furnish electricity." Based on the parties' proposed construction, it is clear that there is no dispute as to the meaning of "battery." Both parties agree that this is a cell that furnishes electricity and that there may be one or more of these cells in the battery compartment. The dispute over the construction of this phrase lies in the meaning of "compartment." Richmond asserts that the compartment is an enclosed space. Forever Gifts asserts that the compartment is a structure that holds batteries.

In support of his construction that a battery compartment is an enclosed space, Richmond directs the Court's attention to Fig. 21 of the patent and the related specification discussion of this figure. According to Richmond, the figure shows the battery compartment as a space that is enclosed by various structural members of the invention. He claims this supports his proposed construction. He also, responds that Forever Gifts proposed construction, which requires the battery compartment to be a structure of its own is inconsistent with Fig. 21 and the related discussion of this figure. He asserts that the battery compartment shown in the figure is not its own structure, it is created by the connection of other structural components of the invention and that this is in conflict with Forever Gift's proposed construction.

In support of its proposed construction, that the battery compartment is its own

structure, Forever Gifts directs the Court's attention to other claim language that makes a distinction between the battery compartment and the cavity of the battery compartment. It argues that since the claims make this distinction, Richmond's proposed construction is not correct because it would negate this distinction. Forever Gifts also points to other claim language that requires the neck portion of the invention to be integrally formed with the battery compartment. Forever Gifts argues that it would not be possible to integrally form the neck portion and the battery compartment if the battery compartment was simply an enclosed space and not a structure.

The Court declines to adopt either parties' proposed constructions because neither proposed construction captures the correct meaning of "battery compartment" as it is used in the claims of the patent.

The Court agrees with Forever Gifts that other claim language disagrees with Richmond's proposed construction. The claims make a distinction between the battery compartment and the cavity created by the battery compartment. For example, Claim 9 reads in part, "a battery compartment at least partially disposed in said neck portion providing a cavity to removably receive and support at least one vertically-oriented rechargeable battery ..." '094 Patent at 29:36-39. This claim language makes clear that the battery compartment is not simply the cavity that the batteries are placed into. Instead it is the battery compartment that creates a cavity to place a battery into. Adopting Richmond's proposed construction would negate this distinction and create

ambiguity in the meaning of the phrase.

The Court also agrees with Forever Gifts' assertion that adoption of Richmond's proposed construction would be inconsistent with other claim language that requires the battery compartment to be integrally formed with the neck portion. Richmond's proposed construction requires the battery compartment to simply be an enclosed space with no structure of its own. But, the neck portion is certainly a structure of the invention. Adopting Richmond's proposed construction would require a structure, the neck portion, and a space, the battery compartment, to be integrally formed together. Under these requirements of the claim limitations, Richmond's proposed construction becomes nonsensical because a structure cannot be integrally formed with something that is not a structure.

But, the Court also disagrees with Forever Gifts' proposed construction, which specifically requires the battery compartment to be a unique structural component of the claimed invention. A strict reading of Forever Gifts' proposed construction requires that the battery compartment be a separate and distinct structural limitation of the claimed invention. This is not what is shown in Fig 21 of the patent or described in the discussion related to this figure. What is shown in the figure is a battery compartment that is created by various structural members of the invention. There is no independent structure that could be called the battery compartment. So, Forever Gifts' proposed construction conflicts with this description of what creates a battery compartment.

Because of the specification's description that a battery compartment is not necessarily a separate structural component of the invention and because of the claim language requiring the battery compartment to have some structure, the Court is of the opinion that neither proposed construction is correct. The Court is of the opinion that a battery compartment is an enclosure designed for holding batteries. This agrees with both the claim language that requires the battery compartment to be some type of structure distinct from the cavity that it creates and with the specification's description of a battery compartment being created by structural elements of the invention.

An enclosure is a structure, which has cavity within it and that can be integrally formed with another structure. So, this agrees with the other claim language regarding the battery compartment. In addition, it is not necessary that the enclosure be a structure of its own. An enclosure could be created by other structural components that are interconnected. For example, the enclosure that is the battery compartment in the invention shown in Fig. 21 does not have its own structure, instead, this enclosure is created by joining the neck portion, the cap, and the globe of the invention. These, as shown in the figure, are connected together so that they form the closed off battery compartment. There is an enclosure, which is structural in nature, but there is no distinct structural component that is the "battery compartment."

So, because the claim language requires the battery compartment to be structural in nature but the patent's description of the battery compartment makes it clear that

the battery compartment does not have to be a structure of its own the Court construes "battery compartment" to mean "enclosure for holding a cell or cells that furnish electricity."

### b. "integrally formed"

The parties also dispute the meaning of "wherein said battery compartment is integrally formed with said neck portion," which is found in Claims 5 and 9 of the patent in suit. The dispute over the meaning of this phrase is over the meaning of "integrally formed." Richmond asserts that "integrally formed" should be construed as "shaped or molded as a unit with [the other integrally formed part or portion]." Forever Gifts asserts that the phrase should be construed as "made functionally inseparable."

In support of his construction of integrally formed, "shaped or molded as a unit with [the other integrally formed part or portion], Richmond argues that the abstract and Fig. 21 of the '094 Patent support this construction. Richmond also cites prior art of the '094 Patent and dictionary definitions to support his position. In response to Forever Gifts' proposed construction, Richmond argues that neither the intrinsic or extrinsic evidence supports this construction and that the construction is ambiguous because it is unclear what would make something "functionally inseparable."

In support of its construction of integrally formed, "made functionally inseparable," Forever Gifts argues that Richmond's proposed construction would read out the invention described in Fig. 21 and that the specification does not further

support Richmond's proposed construction. Forever Gifts also provides the Court with dictionary definitions, which it asserts are more appropriate than those provided by Richmond, considering the disclosure of the specification.

The Court is of the opinion that neither parties' proposed construction is correct because neither correctly captures the meaning of the phrase as used in the claims and as supported by the specification. Regarding Forever Gifts' proposed construction, that the phrase means "made functionally inseparable," the Court finds this proposed construction to be ambiguous and unhelpful in clarifying the meaning of the phrase. As pointed out by Richmond, under this proposed construction two parts could be functionally inseparable if the two parts were produced individually and then attached to each other by gluing the two parts together or other method that prevents the two parts from being separated later. This is not the normal usage and meaning of integrally formed. The normal usage and meaning of formed connotes that something is made. The normal usage and meaning of integral connotes that the parts are integrated as one complete unit. Under the normal usage of the words together, this would mean that things that are integrally formed are made as one unit. Forever Gifts' proposed construction goes beyond this normal meaning of the words of the phrase because two pieces that are individually made and then permanently affixed together are not made as one unit.

The Court finds that Richmond's proposed construction, "shaped or molded as a

unit with [the other integrally formed part or portion], is much closer to the normal meaning of the words "integrally formed," but the proposed construction adds unnecessary language. Richmond's proposed construction requires that whatever is integrally formed be "shaped or molded." Certainly shaping or molding an item is one way to form an item, but this is not necessarily the only way to do this and there is nothing in the patent to support limiting "formed" to "shaped or molded." The normal meaning of formed means that something is made. Things can be made in many ways, and as pointed out by Forever Gifts, the "shaped or molded" language may be more appropriate in the context of clay or metallurgical arts, which are not present here. In addition the specification does not discuss molding or forming the parts of the invention. For these reasons, the Court is of the opinion that inclusion of the "shaped or molded" language of Richmond's proposed construction would be incorrect because it improperly limits the meaning of "formed" without support in the patent for using this limited meaning. For this reason, the Court declines to adopt Richmond's "shaped or molded" language in the construction of "integrally formed."

The Court also finds that the "with [the other integrally formed part or portion]" portion of Richmond's proposed construction is unnecessary and is not helpful in clarifying the meaning of the phrase. This portion of Richmond's proposed construction appears to be included for the purpose of clarifying what parts are integrally formed together. The claim language already states that it is the battery compartment and the

neck of the claimed invention that are integrally formed. Since the normal meaning of integrally formed means that the parts are made as one unit, it is already apparent from this meaning and the claim language requiring the battery compartment and the neck to be integrally formed, that it is these two parts that must be integrally formed. So, at best it is redundant to include further language in the construction to that effect and inclusion of this language may cause ambiguity in the meaning of the phrase. For this reason, the Court declines to adopt this portion of Richmond's proposed construction.

Both parties point to Fig. 21 of the patent in support of their proposed constructions. Richmond argues that the figure indicates a battery compartment and neck portion of the invention that are shaped or molded as one unit, as opposed to simply being connected together after each piece is made individually. Forever Gifts argues the opposite; because the unit is made up of the neck, closure member, and pad Richmond's proposed construction would read out this disclosed embodiment of the invention.

The Court disagrees with Forever Gifts' assessment of the description provided by Fig. 21. The figure shows a battery compartment 858 and a neck 866. In this figure the battery compartment and the neck are one unit. The walls of the neck portion are also the walls of the battery compartment. And, the specification, in the discussion of the embodiment depicted in Figure 21, states that this is what the inventor meant by "integrally formed." The relevant portion of the specification reads as follows, "In

respect of the above preferred embodiment, the battery compartment 858 is integrally formed with the neck 866 and engages the closure member 860 by means of an annular seal (not shown) to sealingly connect the closure member 860 to the neck 866." '094 Patent at 27:22-26.

In regards to Forever Gifts' reference to the battery compartment of Fig. 21 also being made up of the closure member 860, including pad 868 the Court disagrees with Forever Gifts that these components are part of the battery compartment that must be integrally formed with the neck. While the closure member is required to close the battery compartment, so that the batteries will stay in the compartment, the closure member is a distinct structure from the battery compartment/neck portion. Other claim language supports this interpretation. In the claims, the closure member is claimed as a distinct limitation of the claimed invention. For example, Claim 12 reads in part as follows:

> "... a base portion ... said base portion comprises:
> a base housing;
> a substantially tubular neck portion extending below said base housing;
> a battery compartment at least partially disposed in said neck portion
>    providing a cavity to removably receive at least one rechargeable
>    battery; and
> a closure member that acts as a cap or lid to said battery compartment; ..."
> '094 Patent at 30:25-34.

As can be clearly seen from the claim language, one portion of the invention is a base portion, which is made up of a housing, a neck, a battery compartment, and a

closure member. The battery compartment and the closure member are distinct limitations claimed in the base portion of the invention and there is no requirement that the closure be integrally formed with any other components. So, the fact that the invention depicted in Fig. 21 shows the battery compartment being covered by the closure has no bearing on the meaning of integrally forming the battery compartment and the neck portion.

In summary, because the words "integrally" and "formed" are used in the claims with their normal and customary meanings; construing "integrally formed" to include items that are made "functionally inseparable" is broader than the normal meanings of these words; forming something is not necessarily limited to shaping or molding; and there is no basis in the patent from deviating from the usual meaning of these words the Court construes "integrally formed" to mean "made as a single unit."

### 4.    "closure member," "lower aperture," and "a diffuser having a lower aperture."

The parties dispute the meanings of the phrases "closure member that acts as a cap or lid," which occurs in Claims 1, 10, and 12; "a closure member that acts a cap or lid to a lower aperture of said battery compartment," which occurs in Claims 1 and 12; and "an at least partially light transmissive diffuser having a lower aperture," which occurs in Claim 9. The parties dispute over the meanings of these phrase is over the meanings of "closure member that acts as a cap or lid" and "lower aperture."

### a. "lower aperture"

Richmond asserts that the phrase "lower aperture" should be construed as "the bottom opening." In support of this construction, Richmond argues that "lower" should be construed to mean "bottom" because the specification repeatedly uses "lower" to describe the "bottom" of an object and not simply something that was below the midline of an object. Forever Gifts asserts that the phrase should be construed as "opening located at a lower position." In support of this construction, it argues that the proposed construction provides the well understood meaning of "lower" and that Richmond's proposed construction deviates from this meaning by requiring lower to mean at the "bottom."

The Court initially notes that there is no dispute that an aperture is an opening because both parties propose this meaning in their constructions. The Court agrees with the parties that an aperture is an opening.

The real dispute over this phrase is the meaning of "lower." Richmond's proposed construction requires this to be the bottom of an object. Forever Gifts simply repeats the word "lower" in its proposed construction.

The Court agrees with Forever Gifts that the normal meaning of "lower" is not the "bottom" of an object. The normal usage of the word "lower" means that something is below something else. It could be used to describe the relative locations of two things, like a lower opening and an upper opening. Or the word could be used, in normal usage,

to mean below the midline of an object. Richmond argues that "lower" can also be used in its normal meaning to describe something that is at the very bottom of something else; that "lower" is regularly used as the counterpart of "upper," and so the "lower" can also mean the "bottom."

The Court disagrees with this assertion. "Upper" and "lower" are counterparts that indicate either the relative placement of objects or the indicate the top half and the bottom half of an object. In this case, there is no "upper" counterpart to the "lower" aperture. So, under the normal meaning of the word, this would mean that "lower" is referring to the bottom half of something. If one wishes to indicate that he or she is referring to the very top or bottom of any object, then simply referring to "upper" or "lower" is insufficient to do this. Instead, one would use "top" or "bottom," which are counterparts of each other. "Top" and "bottom" are also subsets of the "upper" and "lower" portions, respectively, because something that is on the bottom of an object is certainly on the lower half of that object. But, the converse is not necessarily true, i.e. something on the lower half of an object does not have to be on the bottom of an object. So, the words "top" and "bottom" are much more specific and different from the words "upper" and "lower."

The Court also rejects Richmond's assertion that "lower" should mean "bottom" because the specification repeatedly uses the word "lower" to describe something that is on the bottom and the figures of the '094 Patent show the apertures as being on the

bottom. The Court notes that Richmond is correct in its assertions regarding the use of the word "lower" in the specification. The specification uses "lower" many times and when it does, the figures indicate that what is being referred to is at the bottom. But as just discussed, "bottom" is a subset of "lower." Because of this, each time figures show an aperture as being on the bottom and the specification refers to this as being lower, this is a correct usage of the word "lower." The apertures are lower, i.e below the midline. They just also happen to be on the bottom. So, the wording of the specification does not support a construction that defines lower as being the bottom any more than it supports using the common meaning of lower.

In addition to this, "bottom" is a more specific way to describe something that is on the lower half of an object. If the inventor desired the aperture to be limited to the bottom, then the inventor could have just as easily used the word "bottom" instead of the word "lower." In this case, the inventor did not. The inventor chose to use the more general word "lower" and gave no indication that any special meaning was to be applied to this term. So, the inventor should be held to his words and the usual meaning of his words.

In regards to Forever Gifts' proposed construction of "lower aperture," which is "opening located at a lower position," the Court is of the opinion that this proposed construction does not clearly capture the meaning of the word "lower." Forever Gifts' proposed construction requires that the opening be at a lower position, but it does not

state what this position is lower than. This proposed construction is more directed to the usage of the "lower" to indicate a relative position of two things. It describes lower in a relative way, but does not provide what that is relative to, i.e. there is no indication of what is "upper." But, there is an alternative meaning of the word "lower" that is more applicable in this case because the claims do not provide a relative upper item. That is that the word "lower" is referring to below the midline of an object. Forever Gifts' proposed construction does not capture this idea. For this reason, the Court declines to adopt Forever Gifts' proposed construction.

In conclusion, because the normal meaning of the word "lower," that makes sense in this case, means something below the midline; there is no support in the specification to deviate from this usual meaning; and the inventor could have used the word "bottom" if he wanted the claims to be so limited the Court construes "lower aperture" to mean "opening below the midline."

### b. "closure member that acts as a cap or lid"

Richmond asserts that the phrase "closure member that acts as a cap or lid" be construed as "a movable fitting for closing an open end." Forever Gifts asserts that the phrase "closure member that acts as a cap or lid" should be given its plain and ordinary meaning or in the alternative be construed as "a structure for closing an open space." Based on the parties' proposed constructions, the key dispute over the meaning of this phrase is whether the closure member closes an opening on the end of the something or

if it is not necessary or proper to specify that the opening is on the end. Richmond proposes that the closure member must close an opening on the end and Forever Gifts proposes that the construction should not specify where the opening is at.

The Court agrees with Forever Gifts that in that it would not be proper to specify that the opening that is closed by the closure member is on an end. The Court views this proposed construction as being in line with Richmond's proposed construction of "lower," which requires an aperture to be on the bottom of an object. In this case, the opening would be on the bottom of the battery compartment. Naturally, if the opening was on the bottom of the battery compartment, a fitting that was designed to close this opening would be on the end of this compartment. But, the Court did not accept Richmond's proposed construction of "lower." Instead, the Court construed "lower" to mean "below the midline."

Under this construction, the opening is not required to be on the bottom. It could be on the side of the battery compartment below the midline of the battery compartment. This would mean that the closure does not cover an opening on the end of the battery compartment. So, Richmond's proposed construction of this phrase conflicts with the Court's construction of "lower aperture." For this reason, the Court declines to adopt Richmond's proposed construction. In addition, since the construction of "lower aperture" already sets in place where the opening must be located, it is unnecessary to further specify this location in the construction of this

disputed phrase. The closure member acts as a cap or lid, so it naturally covers the aperture or opening.

The remainder of both parties' proposed constructions attempt to define "closure member" and "acts as a cap or lid." Richmond proposes that these phrases be construed to so that a closure member that acts as a cap or lid is "a movable fitting for closing," and Forever Gifts proposes that this mean "a structure for closing an open space."

The Court is of the opinion that "closure member" and "acts as a cap or lid" do not need construction. The meanings of both of these phrases are meanings that a lay juror would easily understand; the words of the phrases are not used with a meaning other than their normal meanings; and there is nothing ambiguous about these phrases. A "closure member" that "acts as a cap or lid" is simply a structure that is used to close an opening the way a cap or lid would do and a jury would understand this from the claim language as it is written. For this reason, the Court is of the opinion that this phrase does not require any construction.

In summary, because Richmond's proposed construction requiring the opening to be on the "end" conflicts with the Court's construction of "lower aperture"; the location of the opening that is closed by the closure member is already described in the construction of other disputed phrases; and the meaning of the disputed phrase would be easily understood by a juror the Court holds that "closure member that acts as a cap or lid" does not need to be construed and the phrase shall be given its plain and ordinary

meaning.

## V. Agreed Terms/Phrases

The Court notes that the parties have submitted to the Court certain terms in which the parties assert construction is necessary, but that the parties agree to the construction of those terms and phrases. The Court hereby approves and adopts the agreed constructions of the parties.

**SO ORDERED.**

Signed May 27th, 2015.

*Ed Kinkeade*

ED KINKEADE
UNITED STATES DISTRICT JUDGE

**SUMMARY CHART OF CLAIM CONSTRUCTIONS OF DISPUTED TERMS**

**Disputed Terms of the '094 Patent**

| Language of Disputed Priority Term of Claims | Richmond's proposed Construction | Forever Gifts' Proposed Construction | Judge's Construction |
|---|---|---|---|
| "an at least partially light-transmissive diffuser"<br><br>and<br><br>"diffuser," | Plain and ordinary meaning, or in the alternative,<br><br>"at least partly light-transmissive structure for spreading light such that objects, etc., on the opposite side are not clearly visible"<br><br>and<br><br>"light distribution device for spreading light such that persons, objects, etc., on the opposite side are not clearly visible" | "a partially light-transmissive device that distributes or spreads light from a light source evenly"<br><br>and<br><br>"a device that distributes or spreads light from a light source evenly" | "an at least partially light-transmissive structure for spreading light."<br><br>and<br><br>"a structure for spreading light" |
| "axial conduit" | "axially elongated pipe or tube" | "a tube or pipe situated along an axis" | "a tube or pipe." |
|  |  |  |  |

| "battery compartment" | Plain and ordinary meaning, or in the alternative, "a part of enclosed space that holds a cell or cells that furnish electricity" | "structure that holds a cell or cells that furnish electricity" | "enclosure for holding a cell or cells that furnish electricity" |
| --- | --- | --- | --- |
| "integrally formed" | "shaped or molded as a unit with [the other integrally formed part or portion]" | "made functionally inseparable" | "made as a single unit" |
| "lower aperture" | "the bottom opening" | "opening located at a lower position" | "opening below the midline" |
| "closure member that acts as a cap or lid" | "a moveable fitting for closing an open end" | Plain and ordinary meaning, or in the alternative, "a structure for closing an open space" | Plain and ordinary meaning |